**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL NACHMAN,<br>individually and on behalf of a class of<br>similarly situated persons,<br><br>                    Plaintiff,<br><br>          v.<br><br>TESLA, INC., TESLA LEASE TRUST, and<br>TESLA FINANCE LLC,<br><br>                    Defendants. | Case No. 2:22-cv-5976-RPK-ST |

**<u>Plaintiff's Memorandum of Law in Opposition to</u>**
**<u>Defendants' Motion to Dismiss the Complaint</u>**

**Severed on January 27, 2023**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION .......................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 2

LEGAL STANDARDS .................................................................................................... 3

    I.   Federal Rule of Civil Procedure 12(b)(1).......................................................... 3

    II.  Federal Rule of Civil Procedure 12(b)(6).......................................................... 3

ARGUMENT .................................................................................................................. 4

    I.   The GBL Claims Are Not Time-Barred............................................................. 4

        A.  The legal standard for addressing the statute of limitations on a motion to dismiss........ 4

        B.  The statute of limitations at issue here ................................................. 6

    II.  Plaintiff Has Pled A Reasonable Consumer Could Be Misled By Tesla's ADAS Statements. .................................................................................................. 12

    III.  The Complaint Sufficiently Alleges a Claim for Unjust Enrichment ................. 18

        A.  The Unjust Enrichment claim is not duplicative.............................................. 18

        B.  Tesla's arguments pursuant to Federal Rule of Civil Procedure 9(b) are without merit 19

    IV.  Nachman's Dismissal of His Claim for Injunctive Relief.................................... 20

    V.  Rule 15 Mandates that Leave to Replead Should be Given Freely ..................... 20

CONCLUSION............................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>CASES</u>

*Abbas v. Dixon*,
480 F.3d 636 (2d Cir. 2007) ................................................................. 5

*Allegra v. Luxottica Retail N.A.*,
341 F.R.D. 373 (E.D.N.Y. 2022)................................................... 13, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................... 3, 4

*Ashour v. AriZona Beverages USA LLC*,
2022 WL 14038713 (S.D.N.Y. Oct. 24, 2022) ...................................... 19

*Axon v. Florida's Nat. Growers, Inc.*,
813 F. App'x 701 (2d Cir. 2020) ...................................................... 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................... 4

*Bionpharma Inc. v. CoreRx, Inc.*,
2022 WL 16963632 (S.D.N.Y. Nov. 15, 2022)..................................... 20

*Campbell v. Whole Foods Market Grp.*,
516 F. Supp. 3d 370 (S.D.N.Y. 2021) .......................................... 3, 16

*Carriuolo v. Gen. Motors Co.*,
823 F.3d 977 (11th Cir. 2016) ........................................................ 13

*Carter v. HealthPort Tech. LLC*,
822 F.3d 47 (2d Cir. 2016) ............................................................. 3

*Corsello v. Verizon New York, Inc.*,
967 N.E.2d 1177 (N.Y. 2012)........................................................... 9

*Dash v. Seagate Tech (U.S.) Holdings, Inc.*,
27 F. Supp. 3d 357 (E.D.N.Y. 2014) ................................................ 14

*Duran v. Henkel of Am., Inc.*,
450 F.Supp.3d 337 (S.D.N.Y. 2020) ................................................ 13

*Dwyer v. Allbirds, Inc.*,
598 F.Supp.3d 137 (S.D.N.Y. 2022) ................................................ 17

*Eidelman v. Sun Prods. Corp.*,
  2022 WL 1929250 (2d. Cir. June 6, 2022) ............................................................. 12

*Essex Capital Corp. v. Garipalli*,
  2018 WL 6618388 (S.D.N.Y. Dec. 18, 2018) ........................................................... 4

*Fishon v. Peloton Interactive, Inc.*,
  2022 WL 3284670 (S.D.N.Y. 2022) ................................................................... 14, 15

*Gaidon v. Guardian Life Ins. Co. of Am.*,
  96 N.Y.2d 201 (N.Y. 2001) ................................................................... 6, 7, 8, 9

*Gale v. International Business Machines Corp.*,
  9 A.D.3d 446, 781 N.Y.S.2d 45 (2d Dep't 2004) ............................................. 14, 15

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  8 F.Supp.3d 467 (S.D.N.Y. 2014) ......................................................................... 14

*Golden Pac. Bancorp v. F.D.I.C.*,
  273 F.3d 509 (2d Cir. 2001) ................................................................................. 18

*Hasemann v. Gerber Prods. Co.*,
  331 F.R.D. 239 (E.D.N.Y. 2019) .......................................................................... 13

*Henry v. Daytop Vill., Inc.*,
  42 F.3d 89 (2d Cir. 1994) ...................................................................................... 19

*Hesse v. Godiva Chocolatier, Inc.*,
  463 F.Supp.3d 453 (S.D.N.Y. 2020) ..................................................................... 16

*Koch v. Acker, Merral & Condit co.*,
  967 N.E.2d 675 (N.Y. 2012) ................................................................................. 12

*Kurtz v. Kimberly-Clark Corp.*,
  321 F.R.D. 482 (E.D.N.Y. 2017) .......................................................................... 13

*Lim v. Radish Media, Inc.*,
  2022 WL 2292768 (S.D.N.Y. June 24, 2022) ...................................................... 4, 5

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) ................................................................................. 21

*Lynch v. City of N.Y.*,
  952 F.3d 67 (2d Cir. 2020) ..................................................................................... 4

*Mantikas v. Kellogg Co.*,
  910 F.3d 633 (2d Cir. 2018) ................................................................................. 16

iv

*McCracken v. Verisma Sys., Inc.*,
2017 WL 2080279 (W.D.N.Y. May 15, 2017) ........................................................ 18

*Newman & Schwartz v. Asplundh Tree Expert Co.*,
102 F.3d 660 (2d Cir. 1996) .................................................................................... 19

*Nuss v. Sabad*,
2016 WL 4098606 (N.D.N.Y. July 28, 2016) ......................................................... 18

*PK Music Performance, Inc. v. Timberlake*,
2018 WL 4759737 (S.D.N.Y. Sept. 30, 2018) ........................................................... 5

*Rodriguez v. It's Just Lunch, Intern.*,
300 F.R.D. 125 (S.D.N.Y. 2014) ............................................................................. 13

*Sharpe v. A&W Concentrate Co*,
2021 WL 3721392 (E.D.N.Y. July 23, 2021) .......................................................... 13

*St. John's Univ., New York v. Bolton*,
757 F. Supp. 2d 144 (E.D.N.Y. 2010) .................................................................... 19

*Stuart v. Am. Cycanamid Co.*,
158 F.3d 622 (2d Cir. 1998) ...................................................................................... 6

*Stutman v. Chemical Bank*,
731 N.E.2d 608 (N.Y. 2000) .................................................................................... 13

*Trombetta v. Novocin*,
2021 WL 6052198 (S.D.N.Y. Dec. 21, 2021) ............................................... 5, 6, 12

*U.S. v. Livecchi*,
711 F.3d 345 (2d Cir. 2013) ...................................................................................... 5

*Warner v. StarKist Co.*,
2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019) ....................................................... 18

*Winston v. Hershey Co.*,
2020 WL 8025385 (E.D.N.Y. Oct. 26, 2020) ......................................................... 14

## STATUTES

New York General Business Law §§ 349 and 350 ............................................... passim
N.Y. C.P.L.R. 213 ........................................................................................................ 18
N.Y. C.P.L.R. 214 .......................................................................................................... 6

## **<u>RULES</u>**

Federal Rule of Civil Procedure 8 ................................................................................. 3, 4, 19

Federal Rule of Civil Procedure 9(b)................................................................................. 3, 19

Federal Rule of Civil Procedure 12(b)(1) ............................................................................... 3

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 3, 4, 5

Federal Rule of Civil Procedure 15 ......................................................................................... 20

Plaintiff Michael Nachman ("Plaintiff" or "Nachman") respectfully submits this memorandum of law in opposition to the Motion to Dismiss Plaintiff's Class Action Complaint filed by Defendants Tesla, Inc., Tesla Lease Trust, and Tesla Finance, LLC (collectively, "Tesla" or "Defendants"). *See* Mem. Supp. Defs.' Mot. Dismiss Compl. ("Motion" or "Def. Mem.").

For the reasons set forth below, the Court should deny the Motion in its entirety.

## **INTRODUCTION**

This consumer class action asserts that Defendants deceptively marketed their Tesla vehicles as equipped with advanced driver assistance systems ("ADAS"), a.k.a. "Autopilot", "Enhanced Autopilot", and "Full Self-Driving Capability" ("FSD"). Unfortunately for consumers, the vehicles require constant and intensive human supervision and interaction, meaning they are not in fact self-driving. Plaintiff brings claims under New York General Business Law ("GBL") §§ 349 and 350, as well as a claim for unjust enrichment.

Tesla moves to dismiss, arguing:

1) *The GBL claims are time-barred*. But the statute of limitations is an affirmative defense, which can only be granted if it clearly applies based on the face of the Complaint. Tesla's theory presumes the claim accrued on the date of purchase, but this misapprehends the claim. Upon purchasing the vehicle, Plaintiff was told ADAS would be coming in an over-the-air software update in the near future—thereby creating an unrealistic expectation—but that future never arrived. Under New York law, the GBL claim arose when Tesla failed to meet that unrealistic expectation. There is plenty of evidence in the Complaint that the failure occurred within the statute of limitations, and therefore it cannot be said that the defense applies on the face of the pleadings.

2) *Plaintiff fails to allege causation under the GBL, and he could not be deceived by the claims he did see*. This argument ignores both the current state of the law and portions of the

pleadings. Further, the argument fails to address many of the statements Tesla made to consumers, all in an attempt to have the Court decide questions of fact at the pleading stage.

3) *The unjust enrichment claim is duplicative of the GBL claims.* The claim is not duplicative because of differences in the time limits, relief, and elements between the causes of action, while simultaneously, it can be pled in the alternative; and

4) *Plaintiff is not entitled to injunctive relief*. Plaintiff is voluntarily dismissing his request for injunctive relief.

## FACTUAL BACKGROUND

Tesla deceptively marketed the ADAS feature of its vehicles, making statements such as:

- "With Smart Summon, your car will navigate more complex environments and parking spaces, maneuvering around objects as necessary to come find you", Compl. ¶ 94;

- "The system is designed to be able to conduct short and long distance trips with no action required by the person in the driver's seat", *id.* at ¶ 95;

- "All you will need to do is get in and tell your car where to go. If you don't say anything, the car will look at your calendar and take you there as the assumed destination or just home if nothing is on the calendar," *id.*; and

- "When you arrive at your destination, simply step out at the entrance and your car will enter park seek mode, automatically search for a spot, and park itself," *id.*

Tesla made clear that the vehicle had the hardware it needed. *See* Compl. ¶ 93. All that was missing was the necessary software, which Tesla was always on the cusp of providing in an over-the-air software update. *Id.* at ¶¶ 1, 95.

Unfortunately for consumers, the requisite over-the-air update was never forthcoming, and

the vehicles had nowhere near the autonomy Telsa promoted. Instead, for years, there were reports of accident after accident caused by the ADAS feature. *See* Compl. ¶¶ 38-40, 42, 44, 45, 52-56, 58-63, 65-67, 71-75, 77-78, 81-83, 86-87. When tested, ADAS was described as "like a drunken or distracted driver", or "a 14-year-old who has been learning to drive for the last week and sometimes appears to consume hard drugs." *Id.* at ¶¶ 59, 87. As a result of Telsa's deceptive marketing of its ADAS feature, Plaintiff and the New York class members have been injured, in that they paid thousands of dollars extra for a feature that never materialized. *See id.* at ¶ 100.

## LEGAL STANDARDS

### I.  FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

"When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the 'Pleadings'), the plaintiff has no evidentiary burden." *Carter v. HealthPort Tech. LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "The task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest [the plaintiff] has standing to sue.'" *Id.* (citation omitted and modifications in original). The Court "'accept[s] as true all material [factual] allegations of the complaint' and 'draw[s] all reasonable inferences in favor of the plaintiff.'" *Id.* (citations omitted).

### II.  FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

It is well-established that "[c]laims under GBL §§ 349 and 350 are not required to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *Campbell v. Whole Foods Market Grp.*, 516 F. Supp. 3d 370, 381 (S.D.N.Y. 2021) (citation omitted). Thus, to survive a Rule 12(b)(6) motion the complaint need only set forth "a short and plain statement of the claim showing that [Plaintiff] is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009). It is equally well-established that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Indeed, "[b]ecause plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible." *Lynch v. City of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020) (citation omitted). Consequently, "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Id.*

As the United States Supreme Court has recognized, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atlantic Corp.*, 550 U.S at 556 (citation omitted).

## **ARGUMENT**

### I.   **THE GBL CLAIMS ARE NOT TIME-BARRED.**

#### A.   **The legal standard for addressing the statute of limitations on a motion to dismiss**

The statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1). "While courts cannot ordinarily decide a statute of limitations defense on a motion to dismiss, 'courts in this district have made an exception where (1) the complaint facially shows noncompliance with the limitations period, and (2) the affirmative defense clearly appears on the face of the pleadings.'" *Lim v. Radish Media, Inc.*, 2022 WL 2292768, *2 (S.D.N.Y. June 24, 2022) (quoting *Essex Capital Corp. v. Garipalli*, 2018 WL 6618388, at *2 (S.D.N.Y. Dec. 18, 2018)).

"A motion to dismiss for failure to comply with the statute of limitations is treated as a

motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6)." *Lim*, 2022 WL 2292768, *3. "The pleading requirements in the Federal Rules of Civil Procedure. . . do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007); *Lim*, 2022 WL 2292768, *3 (same). Because the defendant bears the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it appears on the face of the complaint that the statute of limitations has run." *Lim*, 2022 WL 2292768, *3; *see U.S. v. Livecchi*, 711 F.3d 345 (2d Cir. 2013) ("statute of limitations is an affirmative defense for which [the defendant] bears the burden of proof"). "Where there is even 'some doubt' as to whether dismissal is warranted, a court should not grant a Rule 12(b)(6) motion on statute of limitations grounds." *Id.* (quoting *PK Music Performance, Inc. v. Timberlake*, 2018 WL 4759737, at *7 (S.D.N.Y. Sept. 30, 2018)).

The decision in *Trombetta v. Novocin* is illustrative of the application of these principles. The plaintiff brought suit for copyright infringement under the Digital Millennium Copyright Act ("DMCA"). *Trombetta v. Novocin*, 2021 WL 6052198, at *1 (S.D.N.Y. Dec. 21, 2021). The plaintiff filed the complaint on February 17, 2020; therefore, claims had to accrue after February 17, 2017. *Id.* at *7. The plaintiff alleged she first discovered the infringing post sometime in 2015. *Id.* She also alleged finding a similar post in May 2017. *Id.* According to the court,

> It is unclear whether Trombetta is alleging that the 2015 post was in existence in 2017 (1) because Worthpoint never deleted it or (2) because Worthpoint reposted it after deleting it in 2015 or 2016. If the former is true, then Trombetta's copyright claim against Worthpoint accrued in 2015 when she first saw the post, and the claim is untimely. If the latter is true, by contrast, then the reposting constitutes a new copyright violation, one that accrued within the limitations period.

*Id.*

5

In denying the pre-answer motion to dismiss based on the statute of limitations, the court reasoned:

> [I]t is not apparent on the face of the complaint that Trombetta's contributory copyright claims against Worthpoint are untimely. Worthpoint may ultimately prove that it permanently removed the 2015 post and never reposted it, but such a finding is inappropriate at this point. Accordingly, although Worthpoint "may at some point be able to prevail on this affirmative defense," the Court cannot conclude that dismissal is warranted on limitations grounds.

*Id.* at *8.

**B.   The statute of limitations at issue here**

A federal court sitting in diversity applies the statute of limitations of the state. *Stuart v. Am. Cycanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998). Tesla is challenging Plaintiff's GBL §§ 349 and 350 claims.[1] These claims are governed by New York's CPLR 214(2), which sets a three-year statute of limitations. *See Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (N.Y. 2001). Plaintiff filed the action on October 5, 2022. *See generally* Compl. For the reasons discussed below, there are facts in the Complaint that would allow the claim to accrue after October 5, 2019, and therefore within the statute of limitations period.

"In general, a cause of action accrues, triggering commencement of the limitations period, when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief." *Gaidon* 96 N.Y.2d at 210. "In an action to recover for liability created or imposed by statute, the statutory language determines the elements of the claim which must exist before the action accrues." *Id.* "[A]ccrual of a section 349(h) private right of action first occurs when plaintiff has been injured by a deceptive act or practice violating section 349." *Id.*

---

[1] Notably, Tesla has not challenged the statute of limitations on Plaintiff's unjust enrichment claim, and therefore Plaintiff does not address that claim here.

In circumstances such as those presented here, where the defendant makes representations about future events, thereby setting unrealistic expectations, the claim accrues when those unrealistic expectations do not come to be. The *Gaidon* decision is the seminal case establishing this principle.

In *Gaidon*, the plaintiffs brought suit against the life insurer under GBL 349, alleging it "engaged in deceptive marketing and sales practices in promoting sales of its 'vanishing premium' policies through agents' representations and personalized graphic illustrations showing that, after a specified period, 'the policies dividends would thereafter cover the premium costs." *Gaidon*, 96 N.Y.2d at 206. But "[s]ome eight years later, premiums were demanded after the purported date they were to be entirely offset by the dividends." *Id.* at 207.

Like Defendants here, the insurers argued the claims accrued on the date of purchase and were therefore time-barred. *Id.* at 210-11. But the Court rejected this argument, instead finding plaintiffs' "injuries occurred when they were first called upon to pay additional premiums beyond the date by which they were led to believe the policy dividend would be sufficient to cover all premium costs." *Id.* at 211. The court reasoned:

> We held in *Gaidon 1* that the operative allegations of the violation of General Business Law § 349 were that, through "an extensive marketing scheme * * * defendants lured them into purchasing policies by using illustrations that created *unrealistic expectations as to the prospect of premium disappearance* upon a strategically chosen 'vanishing date.' This vanishing date, plaintiffs allege, was *misleading*, as based on the premise that interest rates would continue at a high unprecedented rates for, in some cases, 20 or more years—a premise that defendants allegedly knew to be unlikely".

*Id.* (modifications and emphasis in original).

Based on these allegations, the court reasoned,

> Because the gravamen of the complaints of General Business Law § 349 violations was not false guarantees of policy terms, but deceptive practices inducing unrealistic expectations of continuing interest/dividend rate performance to fully offset premiums at the projected date, **plaintiffs suffered no measurable damage**

*until the point in time when those expectations were actually not met*, and they were then called upon either to pay additional premiums or lose coverage and forfeit the premiums they previously paid. Thus, we conclude, the date when those additional premiums were demanded triggered the Statute of Limitations, and these actions commenced within three years of those dates, were timely commenced.

*Id.* at 211-12 (emphasis added).

Like the plaintiffs in *Gaidon*, here, the gravamen of the complaint is that Defendants engaged in deceptive practices by inducing the unrealistic expectation that the vehicles would have ADAS in the near future. *See, e.g.*, Compl. ¶ 1 ("Tesla has deceived and misled consumers regarding the current abilities of its ADAS technology and by representing that it was perpetually on the cusp of perfecting technology and finally fulfilling its promise of producing a fully self-driving car").

Specifically as to Plaintiff, when he went to the Tesla dealership to design his vehicle, he did so with the sales representative on the Tesla.com website. *See* Compl. ¶ 90. Part of the process included visiting a page of the Tesla website dedicated to ADAS that made statements such as:

- "With Smart Summon, your car will navigate more complex environments and parking spaces, maneuvering around objects as necessary to come find you", *id.* at ¶ 94;

- "The system is designed to be able to conduct short and long distance trips with no action required by the person in the driver's seat", *id.* at ¶ 95;

- "All you will need to do is get in and tell your car where to go. If you don't say anything, the car will look at your calendar and take you there as the assumed destination or just home if nothing is on the calendar," *id.*; and

- "When you arrive at your destination, simply step out at the entrance and your car will enter park seek mode, automatically search for a spot, and park itself," *id.*

The website made clear that the vehicle had the hardware it needed: "All Tesla vehicles produced in our factor[y], including the Model 3, have the hardware needed for full self-driving capability at a safety level substantially greater than that of a human driver." Compl. ¶ 93. It then made the offer for the consumer to "[b]uild upon Enhanced Autopilot and order Full Self-Driving Capability on your Telsa. This doubles the number of active cameras from four to eight, enabling full self-driving in almost all circumstances, at what we believe will be a probability of safety at least twice as good as the average human driver." *Id.* at ¶ 95.

But all of this was predicated on the caveat that the software would be developed and approved in the future. Specifically, it stated,

> **Please note that Self-Driving functionality is dependent upon extensive software validation and regulatory approval, which may vary widely by jurisdiction.** It is not possible to know exactly when each element of the functionality described above will be available, as this is highly dependent on local regulatory approval.

Compl. ¶ 95 (emphasis in original).

Plaintiff viewed these claims and agreed to pay for the additional FSD package, at the cost of approximately $8,000. Compl. ¶¶ 99, 100. Based on Tesla's representations that the system would be improved through over-the-air software updates, Plaintiff continually awaited new updates which would allow for the full self-driving capabilities Telsa claimed the car would have. *Id.* at ¶ 106. Thus, it was this unrealistic expectation of the release of the over-the-air software update that was the deceptive act.

While Tesla took the premium payment for FDS on the date of purchase, that premium payment did not become "measurable damage until the point in time when those expectations were actually not met." *See Gaidon*, 96 N.Y.2d at 211-12; *see also Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (describing *Gaidon* as holding "[i]n that situation, we explained that plaintiffs were not injured, and the statute of limitations did not begin to run, until

the 'unrealistic expectations' that defendants had raised 'were actually not met'").

There is plenty of evidence in the Complaint that the point in time when the ADAS expectations were not met was after October 5, 2019.

The Complaint states:

> Indeed, in every year since 2016, Tesla and Musk have repeatedly made deceptive and misleading statements to consumers indicating that a fully self-driving, fully autonomous Tesla vehicle was just around the corner, often expressly stating that would occur by the end of that calendar year or within the "next year."[2] For example, in May 2019, after years of failing to deliver on prior promises, Musk again promised consumers that a fully self-driving Tesla car would be available by the end of that year, tweeting that "everyone with Tesla Full Self-Driving will be able" to take a fully automated trip in their Tesla from Los Angeles to New York.[3]

Compl. ¶ 8.

The Complaint further states:

> In April 2019, at an event in Palo Alto, California, that Tesla dubbed "Autonomy Day," Musk took to the stage and announced that Tesla vehicles would be capable of full self-driving and autonomously navigating dense urban areas like San Francisco and New York by the end of 2019, and that in two years the company would be making cars without steering wheels or pedals.[4]

Compl. ¶ 57.

Shockingly similar to *Gaidon*, "[i]n October 2020, Tesla increased the price of an FSD package from $8,000 to $10,000, and informed some owners who had previously purchased an FSD package that their vehicles would require a $1,000 hardware upgrade to be compatible with Tesla's FSD technology going forward." Compl. ¶ 64.

---

[2] *See, e.g.*, The Dawn Project, "Elon Musk's broken promises," https://dawnproject.com/wp-content/uploads/2022/06/The-Dawn-Project-Musk-promises-1min-NA.mp4?_=2   (collecting video clips of Musk making such promises from 2014 to 2021).

[3] Elon Musk, https://twitter.com/elonmusk/status/1126611407984779264 (May 9, 2019, 3:14 PM).

[4] R. Baldwin, "Tesla promises 'one million robo-taxis' in 2020," https://www.engadget.com/2019-04-22-tesla- elon-musk-self-driving-robo-taxi.html (Apr. 22, 2019).

In December 2020, "Elon Musk gave an interview to Business Insider in which he promised that Tesla would achieve Level 5 before the end of the following year,[5] stating 'I'm extremely confident that Tesla will have level five next year, extremely confident, 100%.'"[6] Compl. ¶ 68.

The Complaint further states:

In a January 2021 earnings call, Musk stated that the company had made "massive progress on Full Self-Driving," and that it "will become obvious later this year" that "Tesla Autopilot is capable of full self-driving." Musk also stated, "I'm highly confident the car will drive itself for the reliability in excess of a human this year. This is a very big deal." When a financial analyst asked Musk why he was confident Tesla would achieve SAE Level 5 autonomy in 2021, Musk responded, "I'm confident based on my understanding of the technical roadmap and the progress that we're making between each beta iteration."[7]

Compl. ¶ 70.

It further alleges, "[o]n July 26, 2021, on a quarterly earnings call, Musk told investors and reporters that he was confident FSD-equipped Tesla vehicles would soon 'be able to drive themselves with the safety levels substantially greater than that of the average person.'" Compl. ¶ 76.

Still further, "[i]n January 2022, Musk stated on an earnings call, 'My personal guess is that we'll achieve Full Self-Driving this year. I would be shocked if we do not achieve Full Self-Driving safer than a human this year. I would be shocked.'" Compl. ¶ 84.

---

[5] "Level 5" refers to SAE Level 5, a rating system for the autonomy of a vehicle. *See* Compl. ¶¶ 21-25.

[6] Mathias Döpfner, "Elon Musk reveals Tesla's plan to be at the forefront of a self-driving-car revolution," *Business Insider*, https://www.businessinsider.com/elon-musk-interview-axel-springer-tesla-accelerate-advent- of-sustainable-energy (Dec. 5, 2020).

[7] Tesla (TSLA) Q4 2020 Earnings Call Transcript (Jan. 27, 2021), *available at* https://www.fool.com/earnings/call-transcripts/2021/01/27/tesla-tsla-q4-2020-earnings-call-transcript/.

Any one of these allegations sets the point in time when the unreasonable expectations were not met after October 5, 2019. The request for additional payment in October 2020 is particularly pointed. Critical for the present motion, it cannot be said that it is clear on the face of the Complaint that the point at which the unreasonable expectations were not met was before October 5, 2019. Because Tesla is unable to meet its burden to prove that, on the face of the Complaint, the claim accrued prior to that date, the Motion must be denied.[8]

## II.   PLAINTIFF HAS PLED A REASONABLE CONSUMER COULD BE MISLED BY TESLA'S ADAS STATEMENTS.

Tesla next argues Plaintiff's claim fails because he failed to plead he saw certain statements and therefore did not plead causation. Def. Mem. 11. But the argument ignores the current state of the law and the allegations in the Complaint.

It is critical to remember that reliance is not an element of a GBL 349 or 350 claim. *See Koch v. Acker, Merral & Condit co.*, 967 N.E.2d 675, 676 (N.Y. 2012) ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law §§ 349 and 350 claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim"); *see also Eidelman v. Sun Prods. Corp.*, 2022 WL 1929250, at 1 (2d. Cir. June 6, 2022) ("the New York Court of Appeals has held that 'reliance is *not* an element of a section 349 claim'"). As the New York Court of Appeals explained in *Stutman v. Chemical Bank*:

---

[8] Tesla implicitly accepts the premise, that the claim accrues after purchase, in its Motion but believes the date should be the end of 2017 based on a different statement by Musk. *See* Def. Mem. at 8 ("And to the extent he construes any *post-purchase* statement by Tesla as promising that his Model S would become fully autonomous by a specific date, his claims would nonetheless have accrued from at least the end of 2017, a year from when Musk stated that 'Tesla would "be able to demonstrate a demonstration drive of our full autonomy all the way from LA to New York . . . by the end of next year without the need for a single touch."'"). While Tesla may ultimately prevail on this as the date the claim accrued—something Plaintiff contests—that is not a decision that can be made at this juncture. *See Trombetta*, 2021 WL 6052198, at *8 ("although Worthpoint 'may at some point be able to prevail on this affirmative defense,' the Court cannot conclude that dismissal is warranted on limitations grounds").

> Reliance and causation are twin concepts, but they are not identical. In the context of fraud, they are often intertwined. . . . But there is a difference between reliance and causation, as illustrated by the facts of this case. Here, Plaintiffs allege that because of defendant's deceptive act, they were forced to pay a $275 fee that they had been led to believe was not required. In other words, plaintiffs allege that defendant's material deception caused them to suffer a $275 loss. This allegation satisfies the causation requirement. Plaintiffs need not additionally allege that they would not otherwise have entered into the transaction. Nothing more is required.

*Stutman v. Chemical Bank*, 731 N.E.2d 608, 612-13 (N.Y. 2000).

Based on this precedent, the courts have repeatedly recognized, that "[t]o 'satisf[y]' the causation requirement,' '[n]othing more is required' than that a plaintiff suffer a loss 'because of defendant[s'] deceptive act.'" *Rodriguez v. It's Just Lunch, Intern.*, 300 F.R.D. 125, 147 (S.D.N.Y. 2014); *see Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 267 (E.D.N.Y. 2019) (same); *Sharpe v. A&W Concentrate Co*, 2021 WL 3721392, at *2 (E.D.N.Y. July 23, 2021) (quoting *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 531 (E.D.N.Y. 2017)) ("liability 'does not depend on whether class members relied upon the [mis]representatoin when they purchased the [product at issue], nor does it depend on whether the product met their personal, subjective expectations'").

In *Sharpe*, the court provided an example of when a deception could cause injury absent exposure:

> For instance, "a manufacturer's misrepresentation may allow it to command a price premium and to overcharge customers systematically." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 987 (11th Cir. 2016). A manufacturer can do so when a product with the misrepresentation will "attract greater market demand" than a product without the misrepresentation. *Id.* A plaintiff thus suffers an injury when "a company marketed a product as having a 'unique quality' . . . the marketing allowed the company to charge a price premium for the product, and . . . the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality." *Duran v. Henkel of Am., Inc.*, 450 F.Supp.3d 337, 350 (S.D.N.Y. 2020). That injury does not involve reliance, but it still satisfies Article III.

*Sharpe*, 2021 WL 3721392, at *2.

Tesla's cited authority supports this. Def. Mem. 11 n. 9 (citing *Allegra v. Luxottica Retail N.A.*, 341 F.R.D. 373, 394 (E.D.N.Y. 2022)). In a footnote to the cited paragraph, the *Allegra* court

13

lays out the type of allegation that can support causation but not need reliance:

> At first glance, it is difficult to see the difference between reliance and causation. However, Plaintiffs' theory in this case illustrates how there might be a difference. Plaintiffs allege that LensCrafters' false claims about AccuFit resulted in a higher market price for their glasses, thereby *causing* Plaintiffs and other class members to suffer loss, *i.e.*, overpaying for their purchase. At the same time, putative class members need not have relied on LensCrafters' false claims about AccuFit in order to have been injured by them because the price premium caused by the false claims applied across the board to all of LensCrafters' glasses.

*Id.* at n.7 (emphasis in original).

Tesla cites *Winston v. Hershey Co.* for the proposition that Plaintiff must have seen the misrepresentations before purchasing the vehicle to meet the causation requirement. Def. Mem. 11 (quoting *Winston v. Hershey Co.*, 2020 WL 8025385, at *5 (E.D.N.Y. Oct. 26, 2020)). This is based on a quote from *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F.Supp.3d 467, 480 (S.D.N.Y. 2014). While the *Goldemberg* opinion has many meritorious elements, this is one in which it appears to have deviated from established precedent or is at least outdated.

As one court recently noted, "[t]he Court thus disagrees with the statements that appear in some cases that suggest that the only way a consumer can be injured as a result of a false marketing campaign is if she was personally exposed to the campaign and believed and relied to her detriment on the allegedly misrepresented fact." *Fishon v. Peloton Interactive, Inc.*, 2022 WL 3284670, at *13 (S.D.N.Y. 2022) (citing *Goldemberg* and *Dash v. Seagate Tech (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014)). "The principle cited in these cases predates more recent authority and finds its genesis in *Gale v. International Business Machines Corp.* 9 A.D.3d 446, 781 N.Y.S.2d 45 (2d Dep't 2004) . . . ." *Id.* The court then discussed *Gale* in some detail, but concluded, "neither *Gale* nor subsequent cases that relied upon it considered whether an injury that implicates 'reliance' is the *sole* basis upon which causation can be established much less whether it can be established on a market-based price premium theory." *Id.* "More recent cases

have considered that question, and in light of the New York Court of Appeals' holding in *Stutman* that reliance is not required under Section 349 and 350 and its caution not to conflate the two [citation omitted], have concluded that reliance and therefore exposure are not crucial to establishing causation." *Id.* The *Fishon* court goes on to discuss a number of more recent cases, including *Sharpe*, *Hasemann*, and the Second Circuit's recent decision in *Eidelman*. *Id.* at *13-14. In fact, in discussing *Eidelman*, the court stated, "[u]nder this theory of injury, an individual's awareness of an alleged misrepresentation plays no role in the causation analysis because reliance plays no role in it." *Id.* at *14.

Under the current state of the law on GBL 349 and 350 causation, so long as Telsa's ADAS representations were misleading—which they were—and Plaintiff paid money for the feature— which he did, $8,000—he has suffered injury as a result of the misrepresentation for purposes of the statute. This is causation without reliance.

Notwithstanding, Plaintiff can still meet the more burdensome causation requirement Tesla puts forward. In the Complaint, Plaintiff is clear that at the dealership he designed his vehicle with the sales representative on the Tesla website. *See* Compl. ¶ 90. The website included a number of statements and a video about ADAS, *see id.* at ¶¶ 90-98, and that "Plaintiff viewed these claims through the website on the sales representative's computer before agreeing to pay for the additional FSD package." *Id.* at ¶ 99. Thus, Plaintiff pled causation, even under Telsa's promoted standard.

In apparent recognition of this, Tesla argues these statements could not mislead Plaintiff— as a matter of law. *See* Def. Mem. 11. Specifically, it argues, "[t]hat webpage said only that the FSDC 'is designed *to be able to* conduct short and long distance trips with no action required *by the person in the driver's seat.*'" *Id.* (citing Compl. ¶ 95) (emphasis added by Tesla). It goes on to argue, "[t]his is not the same as 'fully autonomous' or SAE Level 5, which would require that the

15

car could 'drive everywhere in all conditions' and without a human driver." *Id.*

But as even a cursory review of the Complaint makes clear, the website said far more than Tesla discusses. *See* Compl. ¶¶ 90-98. For example, it stated, "[w]ith Smart Summon, your car will navigate more complex environments and parking spaces, maneuvering around objects as necessary to come to find you." *Id.* The claim to "navigate more complex environments" "to come to find you" can certainly be reasonably interpreted as a claim of being fully autonomous.

As another example, in a box entitled "Full Self-Driving Capability", it stated, "[a]ll you need to do is get in and tell your car where to go." Compl. ¶ 95. It later states, "[w]hen you arrive at your destination, simply step out at the entrance and your car will enter park seek mode, automatically search for a spot and park itself. A tap of your phone summons it back to you." *Id.*; *see also* ¶¶ 97-98. These statements can be reasonably interpreted as a claim of being fully autonomous, especially the name "Full Self-Driving Capability" and the ability to "park itself" after you have "step[ped] out at the entrance."

These statements are judged by whether they could deceive a reasonable consumer,[9] but "this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Campbell v. Whole Foods Market Grp.*, 516 F.Supp.3d 370, 381 (S.D.N.Y. 2021) (citation omitted). So while the Court can determine that a reasonable consumer could not be misled—as matter of law—"[d]ismissal is warranted only in a 'rare situation' where 'it [is] impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Hesse v. Godiva Chocolatier, Inc.* 463 F.Supp.3d 453, 467 (S.D.N.Y. 2020) (citation omitted). Because it is reasonable that a consumer could view these claims and believe the vehicles would be fully autonomous, this is not a "rare situation" where it is impossible for a consumer to be deceived.

---

[9] *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018).

Tesla's retort is that "a party does not violate GBL 349 by simply publishing truthful information and allowing consumers to make their own assumptions about the nature of the information." Def. Mem. 12 (quoting *Dwyer v. Allbirds, Inc.*, 598 F.Supp.3d 137, 150 (S.D.N.Y. 2022). But the Complaint is replete with evidence that Tesla's statements were not true. *See* Compl. ¶¶ 38-40, 42, 44, 45, 52-56, 58-63, 65-67, 71-75, 77-78, 81-83, 86-87. Rather than being "Full Self-Driving", Tesla's ADAS was described as "like a drunken or distracted driver", or "a 14-year-old who has been learning to drive for the last week and sometimes appears to consume hard drugs." *Id.* at ¶¶ 59, 87. As recently as December 28, 2020, Tesla's legal counsel told the California DMV that the ADAS was SAE Level 2. *See id.* at ¶ 67. The truth is not a defense when the truth is not on your side.

Finally, Tesla points to the alleged "disclaimer" that "Self-Driving functionality is dependent upon extensive software validation and regulatory approval," and "[i]t is not possible to know exactly when each element of the functionality described above will be available, as this is highly dependent on local regulatory approval." Def. Mem. 12. But, rather than act as a "disclaimer" as Tesla claims, these statements set the "unreasonable expectations"—discussed extensively above—that promoted ADAS was just around the bend. *See supra* Part I.B.

*     *     *     *     *

In short, Plaintiff has sufficiently pled causation, both under the current standard as well as that promoted by Tesla, and the statements made could mislead reasonable consumers. As such, the Motion should be denied.

III.   **THE COMPLAINT SUFFICIENTLY ALLEGES A CLAIM FOR UNJUST ENRICHMENT**

A.   **The Unjust Enrichment Claim Is Not Duplicative**

Tesla suggests Nachman's unjust enrichment claim "duplicates" the other New York claims asserted in the Complaint. Def. Mem. 12-13. Not so. Tesla ignores that the statute of limitations of the unjust enrichment claim is six years, N.Y. C.P.L.R. 213(1); *see also Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 518 (2d Cir. 2001) ("The statute of limitations in New York for claims of unjust enrichment . . . is generally six years."), while the statute of limitations for violations of GBL §§ 349 and 350 is three years, N.Y. C.P.L.R. § 214(2). Furthermore, "[t]he elements for an unjust enrichment claim are distinct from the elements for GBL claims under §§ 349 and 350." *Warner v. StarKist Co.*, 2019 WL 1332573, at *3 (N.D.N.Y. Mar. 25, 2019). Accordingly, "a 'reasonable trier of fact could find unjust enrichment . . . without establishing all the elements for one of [plaintiff's other] claims sounding in law.'" *Id.* (quoting *McCracken v. Verisma Sys., Inc.*, 2017 WL 2080279, at *8 (W.D.N.Y. May 15, 2017)); *accord Nuss v. Sabad*, 2016 WL 4098606, at *11 (N.D.N.Y. July 28, 2016) ("For example, even if the jury determines that the [plaintiffs] did not rely on the [defendants'] allegedly fraudulent statements, the Court could still find that the [defendants] received a benefit . . . that aught to in 'equity and good conscience' be turned over to [the plaintiff].").

Additionally, statutory damages are available under GBL §§ 349 and 350, but they are not available for an unjust enrichment claim. N.Y. GEN. BUS. LAW § 349 (creating private right to bring "an action to recover [the plaintiff's] actual damages or fifty dollars, whichever is greater"); N.Y. Gen. Bus. Law § 350-e (creating private right to bring "an action to recover [the plaintiff's] actual damages or five hundred dollars, whichever is greater"). Similarly, damages under GBL §§ 349 and 350 may be statutorily trebled, but, again, no such statutory trebling is available for a

claim of unjust enrichment. N.Y. GEN. BUS. LAW § 349 ("The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section."); N.Y. GEN. BUS. LAW § 350-e(3) ("The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages, up to ten thousand dollars, if the court finds that the defendant willfully or knowingly violated this section.").

Moreover, in 2020, the Second Circuit explicitly stated that "a plaintiff may plead unjust enrichment in the alternative to a breach of warranty claim." *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 706 (2d Cir. 2020) (unpublished) (citing *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996)). Following *Axon*, the Southern District of New York recently denied the defendant's motion to dismiss an unjust enrichment claim in a deceptive advertising case, holding, "[u]nder New York law, 'a plaintiff may plead unjust enrichment in the alternative' when a plaintiff alleges fraud such that the defendants' enrichment was unjust." *Ashour v. AriZona Beverages USA LLC*, 2022 WL 14038713, at *4 (S.D.N.Y. Oct. 24, 2022). Tesla does not even mention *Axon*. In alignment with *Axon*, the Federal Rules of Civil Procedure "explicitly permit Plaintiff to assert claims in the alternative," regardless of consistency. *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010); FED. R. CIV. P. 8(d)(2); FED. R. CIV. P. 8(d)(3); *see Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994). Here, Nachman expressly pleads his unjust enrichment claim "in the alternative." Compl. ¶ 135. For all these reasons, the Court should decline to dismiss Nachman's unjust enrichment claim.

### B. Tesla's Arguments Pursuant to Federal Rule of Civil Procedure 9(b) Are Without Merit

Tesla also challenges Nachman's unjust enrichment claim under Federal Rule of Civil Procedure 9(b) on the ground that Nachman has failed to allege reliance. Def. Mem. 13-14.

Reliance, however, is not an element of an unjust enrichment claim. *Bionpharma Inc. v. CoreRx, Inc.*, 2022 WL 16963632, at *3 (S.D.N.Y. Nov. 15, 2022) ("To state a claim for unjust enrichment in New York, a plaintiff must allege that (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendants to make restitution."). Regardless, Nachman has more than sufficiently alleged reliance. Compl. ¶¶ 90-99; *see also supra* § II. Nachman alleges that on December 31, 2016, he went to a Tesla dealership and designed his Model S with a sales representative on the Tesla.com website. Compl. ¶ 90. The Complaint specifies in detail the statements that were on the Tesla.com website that were made to Nachman prior to his purchase of the Model S, including by means of screenshots of the particular statements. *Id.* at ¶¶ 90, 92-98. The Complaint then makes abundantly clear that Nachman "viewed these claims through the website on the sales representative's computer before agreeing to pay for the additional FSD package." *Id.* at ¶ 99. This careful detail is more than adequate to allege reliance.

Tesla also contends its statements at issue are not misleading. Def. Mem. 13-14. For the reasons discussed above, Tesla's statements are deceptive and actionable. *See supra* § II.

## IV.   NACHMAN'S DISMISSAL OF HIS CLAIM FOR INJUNCTIVE RELIEF.

Tesla has moved to dismiss Nachman's claim for injunctive relief. Def. Mem. 14-15. While Nachman disagrees with Tesla's arguments, in order to streamline this matter, Nachman dismisses without prejudice his claim for injunctive relief.

## V.   RULE 15 MANDATES THAT LEAVE TO REPLEAD SHOULD BE GIVEN FREELY

Federal Rule of Civil Procedure 15 mandates that courts "should freely give leave" to amend in the early stages of litigation "when justice so requires." Fed. R. Civ. P. 15(a)(2). This permissive standard is consistent with the Second Circuit's "strong preference for resolving

disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Plaintiff believes his Complaint sets forth plausible claims for relief; nonetheless, if the Court finds that any aspect of Plaintiff's claims is insufficiently pled, Plaintiff respectfully requests leave to amend to address the insufficiency.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the motion to dismiss. In the alternative, the Court should grant Plaintiff leave to file an Amended Complaint.

Date: January 27, 2023                            Respectfully submitted,

**REESE LLP**

*/s/ Charles D. Moore*
Charles D. Moore
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: 701-3907214
Email: *cmoore@reesellp.com*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email: *mreese@reesellp.com*

**REESE LLP**
George V. Granade
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

*Attorneys for Plaintiff and the Proposed Class*